## Hurt et al. v. Gambill.

June 10, 1941.

Williams & Allen for appellants.

A. H. Patton, O. J. Cockrell, Roscoe C. Back, Ervine Turner, Henry L. Spencer and A. F. Byrd for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

E. L. Gambill brought this action against A. C. and Fred P. Hurt on a note for $1,200, dated September 12, 1921. The signature on the note was "A. C. Hurt & Bro." It was executed to A. L. Gambill and assigned by him to his brother, E. L. The trial resulted in a verdict in favor of the appellee. This appeal is being prosecuted from a judgment on that verdict for the amount of the note with interest from the date of execution.

Prior to 1919, the appellants, together with their brother, W. G. Hurt, were engaged in a partnership logging and mining business in eastern Kentucky. Some of their operations were in Breathitt county. The Hurts and E. L., A. L. and George Gambill were engaged in operating the Lick Branch Coal Company in Breathitt county as a partnership in 1919, and prior thereto. W. G. Hurt died intestate in June, 1919, leaving his widow, Ethel C. Hurt, and an infant child. The mine was operated as usual for the next three years. A. C. Hurt seems to have spent a good part of his time in Breathitt county, but Fred was there infrequently. Some time after 1920, A. C. Hurt and A. L. Gambill took over the operation of the mercantile business in connection with the Lick Branch Coal Company. A. C. Hurt also had an interest in mercantile establishments at Hazard and Lothair. E. L. Gambill purchased the A. C. and W. G. Hurt interests in the mine late in 1922. A part of the

purchase price was represented by a $3,000 note dated November 18, 1922, payable to A. C. Hurt. This note was assigned to Mrs. Ethel Hurt. The mine was about worked out by 1927. Gambill made two small payments on the $3,000 note, and when Mrs. Hurt was pressing him for payment in 1927 he told her that he thought she ought to give him credit for "these A. C. Hurt Bros. notes." The notes referred to by Gambill were the $1,200 note and a $500 note which he said was lost. The controversy between Gambill and Mrs. Hurt was finally settled in 1929 by his paying to her $1,000. During the negotiations between Mrs. Hurt's attorney and Gambill's attorney, question was raised as to the manner in which Mrs. Hurt conveyed the W. G. Hurt interest in the mine to A. C. Hurt, who in turn conveyed it to Gambill. When the matter was finally settled, Mrs. Hurt executed a new deed to Gambill for that interest and also an indemnifying bond guaranteeing that her infant child would ratify the transaction when she became of age. It is beyond dispute that the $1,200 note, which is the subject of this litigation, was frequently discussed prior to the final settlement between Mrs. Hurt and Gambill. Mrs. Hurt's attorney testified that the A. C. Hurt Bros. notes held by Gambill were a part of the final settlement of the $3,000 note for $1,000. Gambill admits that the notes were discussed, but he and his attorney testified that those notes did not enter into the final settlement, expressing the view that, since the $1,200 note was executed some two years after the death of W. G. Hurt, his estate would not be liable for it. There is this significant circumstance in the transaction, however: Gambill did not deliver to Mrs. Hurt's attorney the $1,200 note.

A. C. and Fred Hurt seem to have been insolvent, or heavily involved financially in 1930. It was about that time that Gambill approached Fred about the $1,200 note. Fred testified that that was the first he had heard of it. It appears from the record that at the time of the trial A. C. Hurt was still insolvent, but that Fred was solvent. The position of Fred is that he knew nothing of the note, and, while he had been engaged in a partnership business with his two brothers, he was engaged in no partnership business with his brother, A. C., at the time the note was executed. A. C. Hurt testified that he borrowed the money individually from A. L. Gambill. A. L. Gambill testified, however, that he let A. C. have

$200 to buy some materials for a house near the mine, and that he was in the Lothair store a time or two, and saw Fred working there.

There is some contention that the $1,200 note was first executed in the name of A. C. Hurt and Bros. and that it was fraudulently changed to A. C. Hurt and Bro. The record shows, however, that following the death of W. G. Hurt, the account in the Hargis Bank at Jackson, where the $1,000 loaned by A. L. Gambill was deposited, was changed from A. C. Hurt and Bros. to A. C. Hurt and Bro. On this point Fred, when asked about the manner in which the bank account was carried after the death of W. G. Hurt, said: "Well I would think at W. G. Hurt's death A. C. Hurt might have wanted to change the bank account and went to depositing as A. C. Hurt and Brother." Over the objection of the appellants, the former cashier of the bank testified as to the change in the bank account following W. G. Hurt's death, and also to the effect that A. L. Gambill's $1,000 check was deposited to the account as changed. Complaint is directed also to questions asked A. C. Hurt, who before the trial had given his deposition as if on cross examination, as to alleged contradictory statements concerning the manner in which the partnership business was conducted after the death of W. G. Hurt.

In addition to the complaints just mentioned as to the evidence and certain questions asked A. L. Gambill, reversal is urged upon the grounds that (1) there was no evidence authorizing the jury to find that the appellants were engaged in the mercantile business as partners at the time of the execution of the $1,200 note in 1921; (2) the evidence shows that the note has been paid; and (3) the court should have defined the words "partners" or "partnership."

We may better understand the complaint as to the questions asked A. L. Gambill by quoting from the record:

"Q. 28. What did the Hurt Brothers want with this $1000.00 at the time they borrowed it from you, what did they tell you they wanted with it? A. He said that he wanted to buy an interest in a grocery store at Lothair.

"Q. 18. Who said that?

"Defendants object; objection sustained.

"By the Court: The jury will not consider that as to F. P. Hurt, as affecting the rights of F. P. Hurt.

"Plaintiff excepts to the ruling of the court.

"Q. 19. Who said that? A. A. C. Hurt said he wanted it to buy, to buy it for F. P. Hurt. Him and Alfred Jennings were in partners up there and he wanted to buy Alfred Jennings' interest for F. P. Hurt."

No objection was made to Question 19 and the answer thereto. Immediately before Question 19 was asked the court had instructed the jury not to consider A. L. Gambill's answer, to the effect that A. C. Hurt had said he wanted to buy an interest in a store at Lothair for Fred Hurt for $1,000 as to Fred's interests. It is to be presumed that the jury understood the court's admonition. We are also of the opinion that the other objections to the evidence, namely the aforementioned questions put to A. C. Hurt, and the testimony of the bank cashier, are groundless.

It is insisted that there is no evidence authorizing the jury to find that A. C. and Fred were engaged in the mercantile business as partners at the time of the execution of the $1,200 note in 1921. We think otherwise. We have examined the record carefully, and are convinced that there was sufficient evidence as to the partnership affairs of A. C. and Fred Hurt following the death of W. G. Hurt to warrant the submission of the case to the jury. While A. C. testified that he borrowed the money for himself, we gather from his testimony that the partnership business was continued after the death of W. G. Hurt. There appears to have been no settlement of the partnership affairs after W. G.'s death, and it was conclusively shown that the bank account was changed to A. C. Hurt and Brother. Furthermore, it was only a short period of time after the $1,200 was borrowed that Fred became the owner of the store at Lothair.

The question as to the payment of the note in the settlement between Gambill and Mrs. Hurt has given us some concern. Frankly, had we been sitting as the jury, we would have found for the appellants on the ground that the note had been paid, but this is not to say that there was not sufficient evidence to warrant the

submission of the case to the jury on this point. Our review of the circumstances leading up to the settlement between Gambill and Mrs. Hurt shows that there was more than a scintilla of evidence on the side of Gambill that the note had not been paid. That being the case, regardless of what we have said as to what our conclusion would have been had we been sitting as the jury, we are not prepared to reverse the judgment on this ground. See Barnett v. Gilbert, 280 Ky. 402, 133 S. W. (2d) 529.

We are not of the opinion that the court erred in failing to define the words "partners" or "partnership." We have examined the instructions carefully, all of which were prepared by the appellants, save the second one, which is as follows:

"The Court instructs the jury that if they believe from the evidence that at the time the note sued on that A. C. Hurt and Fred P. Hurt were doing business as partners, or that the said Fred P. Hurt knew of his brother A. C. Hurt transacting business under the style and name of A. C. Hurt and Brother, then they will find for the plaintiff in the amount of said note and interest unless they believe that the said note was settled in the transaction with Ethel Hurt."

The instructions set forth the appellants' theory of the case, and we think that they were so framed as to be readily understood by the jury, whose verdict was unanimous.

Finding no error prejudicial to the appellants' substantial rights, we are forced to the conclusion that the judgment should be and it is affirmed.